**In re Neil Allen CAUGHENBAUGH, Debtor.**

**Lois Ann CAUGHENBAUGH, Plaintiff,**

**v.**

**Neil Allen CAUGHENBAUGH, Defendant.**

**Bankruptcy No. 2–87–04843. Adv. No. 2–88–0006.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Aug. 3, 1988.

Chris A. Martin, Lantz, Lantz & Lipp Co. L.P.A., Lancaster, Ohio, for plaintiff.

Samuel L. Calig, Columbus, Ohio, for defendant.

Daniel F. Carmack, Columbus, Ohio, Chapter 7 trustee.

Charles M. Caldwell, Columbus, Ohio, Asst. U.S. trustee.

## OPINION AND ORDER ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

BARBARA J. SELLERS, Bankruptcy Judge.

Plaintiff Lois Ann Caughenbaugh seeks a determination from this Court that an obligation to her is not dischargeable in defendant Neil Allen Caughenbaugh's Chapter 7 bankruptcy case. Neil Caughenbaugh answered the complaint and the matter was tried to the Court.

The Court has jurisdiction in this adversary proceeding under 28 U.S.C. § 1334(b) and the General Order of Reference previously entered in this district. This dischargeability action is a core proceeding in which this bankruptcy judge may enter a final order. 28 U.S.C. § 157(b)(2)(I).

Neil and Lois Caughenbaugh were married to each other for approximately 25 years. In July 1985, that marriage was terminated by an agreed decree of divorce approved by both parties and their separate counsel. One provision of that decree required the defendant to pay $130 each week to the plaintiff so long as she was residing alone in a separate living accommodation. Those payments were to be made until further order of the state court.

Five months after the divorce, the plaintiff, who had been unemployed by the defendant's preference during their marriage, obtained a job in a nursing home as an aide. On or about that same time both parties received and divided proceeds from the completion of a sale by land contract of jointly-owned real estate.

Despite the language of the divorce decree requiring further order of the state court to alter his obligations, the defendant ceased making the weekly payments to the plaintiff about the time she became employed and received her share of the proceeds from the disposition of the real property. As reason for terminating those payments, the defendant indicated he believed that his obligation continued only until the two events of employment and sale occurred.

Shortly prior to his unilateral termination of payments, the defendant moved to modify his support obligation. He supplemented that motion in December 1985 and later filed yet another motion to modify the decree, citing a change in circumstances. In

the meantime the plaintiff sought to enforce the terms of the original decree. The defendant's three motions to modify and the plaintiff's motion to enforce were heard by the state court on a consolidated basis. The referee's report, adopted by the Court of Common Pleas of Fairfield County, Ohio, denied the defendant's motions to modify the terms of his obligation and granted enforcement rights to the plaintiff. That decision was sustained on appeal by the Court of Appeals for the Fifth Appellate District of Ohio. A motion to certify the record was denied by the Supreme Court of Ohio on September 9, 1987. Shortly before the defendant's bankruptcy case was filed, the plaintiff renewed her motion to have the defendant held in contempt for his failure to comply with the terms of the divorce decree.

■ At the conclusion of the trial of this matter, the Court made certain oral findings which are adopted herein as if restated. Specifically, the Court found that the first two parts of the test in this circuit for the dischargeability of marital obligations had been resolved in favor of the plaintiff. The Court held that, at the time of the divorce, the parties had intended the payments to the plaintiff to be in the nature of support and the payments received by the plaintiff in 1985 had the effect of actually providing support. *In re Calhoun*, 715 F.2d 1103 (6th Cir.1983). The final part of the *Calhoun* test, however, which requires an examination of the appropriateness of the amount of the support award at the time it was made and in light of current circumstances, was reserved for later determination.

■ The Court of Appeals for the Sixth Circuit has directed this Court, when such issues are presented in dischargeability actions, to examine at a threshold basis the reasonableness of support and alimony orders. If the amount awarded as support or alimony is found to be "manifestly unreasonable under traditional concepts of support", appropriate adjustment must be made to protect a bankruptcy debtor's fresh start. *Calhoun*, 715 F.2d at 1110.

The issue before the Court in this matter is whether the binding precedent of *Calhoun* permits modification and reduction of such support orders in a case where the amount and terms of the payments were agreed to by the parties and their separate counsel in the state court. If modification is permitted or mandated under *Calhoun*, does such modification affect only obligations incurred after the date of the bankruptcy filing or does it also affect the amount of arrearage in that support obligation which has accrued since December 1985?

The Court has reviewed the briefs submitted by the parties on this issue and the holdings of *Calhoun* and the later case of *Singer v. Singer (In re Singer)*, 787 F.2d 1033 (6th Cir.1986), which extended the *Calhoun* rationale to periodic payments. Despite the plaintiff's assertions that *Calhoun* represents a departure from existing law and the holdings of other courts, that review convinces this Court that it is required to re-evaluate the terms of the divorce decree and weigh the obligations imposed by the state court against the federal policy of protection for the fresh start granted by a discharge in bankruptcy. *Calhoun*, 715 F.2d at 1110.

■ Because the state court decree of divorce for these parties resulted from an action in which both parties were represented, this Court will not find that the amount initially awarded to the plaintiff was "manifestly unreasonable under traditional concepts of support" at the time the award was made. *Calhoun*, 715 F.2d at 1110 and n. 10. That finding means that any part of the award owing, but unpaid, from the entry of the divorce decree on July 3, 1985 until the commencement of the defendant's bankruptcy case on October 30, 1987 is unaffected by the defendant's discharge in bankruptcy. He remains legally responsible for that nondischargeable arrearage and must arrange with the plaintiff for repayment of that amount.

■ The reasonableness of the debtor's continuing obligation, however, may be determined only by weighing his obligations under the divorce decree against the fresh

start granted to him under the bankruptcy laws. For that purpose, the Court has considered the extensive testimony presented by both parties relating to their current financial circumstances. That evidence established that the plaintiff takes home $400 each month from her job as a nurses' aide. Her monthly expenses are not only very reasonable, but are exceedingly frugal. Each month she requires $625 for basic needs and $200 for payments to her attorney for services relating to litigation of the divorce decree matters. Although $2,700 remains in a savings account from her share of the proceeds of the property sold, the amount by which her monthly expenses exceed her income indicates that this small remaining balance will soon be consumed.

The defendant remarried shortly after the divorce and his current wife is not employed. His take-home pay has decreased significantly since his divorce because of recurring cutbacks in his employment and a sale of the company for which he has worked for twenty-nine years. He now has net monthly income only of $1,321 and no longer has any of the proceeds from the sale of the property formerly owned by the parties. He and his wife have the following expenses:

| | |
|---|---|
| Rent | $300.00 |
| Food | 400.00 |
| Car payments | 120.00 |
| Car expenses | 80.00 |
| Car insurance | 55.00 |
| Clothing | 50.00 |
| Utilities, including telephone | 240.00 |
| Medical expenses | 40.00 |
| Support payments to ex-wife | 600.00 |

Considerations relating to the protection of the fresh start, as set forth in *Calhoun*, 715 F.2d at 1110, n. 11, and this Court's analysis of the parties' financial circumstances require the Court to find that the defendant's circumstances have changed since the entry of that divorce decree such that it would be "manifestly unreasonable under traditional concepts of support" to require him to continue to pay $130 each week to the plaintiff. Maintenance of that amount would be inequitable. By substantially reducing food expenditures and telephone costs and by slightly reducing car and other utility expenses, the Court finds

that the defendant should be able to contribute $80 each week to the plaintiff for her support. Although his second wife, who apparently cares for two aged, infirm parents, may have to supplement the family income to prevent a reduction in living standards, the Court believes it would be inappropriate for the defendant to be relieved entirely from an obligation of support for an ex-spouse from a marriage of twenty-five years' duration where his ex-spouse has very few opportunities to be retrained for employment sufficient to enable her to live with dignity. It is obvious that neither party will be able to live well.

Accordingly, the Court finds that the defendant's continuing post-bankruptcy obligation to the plaintiff shall be nondischargeable only in the amount of $80 each week. The remaining obligation of $50 each week is not characterized as in the nature of support under the rationale of *Calhoun* and shall be discharged.

Based upon the foregoing, judgment shall be entered for the plaintiff for all arrearage in the support obligation from July 3, 1985 to October 30, 1987 and for an amount of $80 each week from October 30, 1987 forward. The remainder of the defendant's post-petition obligation shall be subject to his discharge in bankruptcy. No other terms of the divorce decree are affected by this decision.

IT IS SO ORDERED.