In re Brian T. TARBOX, Debtor.

Marianne Tarbox, Plaintiff,

v.

Brian T. Tarbox, Defendant.

Bankruptcy No. 98–23241–BKC–RBR.

Adversary No. 98–2330–BKC–RBR–A.

United States Bankruptcy Court,
S.D. Florida,
Miami Division.

April 26, 1999.

Frank R. Brady, Boca Raton, FL, for plaintiff.

Eugene Lewis, Sunrise, FL, for defendant.

## MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

Brian Tarbox ("Debtor") and Marianne Tarbox ("Plaintiff") were formerly husband and wife. On March 15, 1998, they were divorced pursuant to a Consent Order of the Circuit Court of Broward County, Florida. Simultaneously, the parties entered into a comprehensive marital settlement agreement that, among other matters, resolved support and property settlement issues arising out of the marriage, or so they thought.

On May 8, 1998, the Debtor filed a voluntary petition for relief under the provisions of chapter 7 of title 11 and is seeking to discharge certain obligations to his former wife, the Plaintiff, arising out of the marital settlement.

The Plaintiff initiated this adversary proceeding to determine the dischargeability of certain of the Debtor's obligations under the agreement. These obligations include $30,000 payable to Plaintiff in three annual installments, the payment of credit card and other debt, the indemnification of Plaintiff from any other marital debt, and the payment of Plaintiff's attorneys fees of $1500.00. Plaintiff alleges that these obligations are in the nature of spousal support and are not dischargeable under 11 U.S.C. § 523(a)(5). Alternatively, Plaintiff alleges that if the debts recited above are not in the nature of spousal

support, they are nevertheless property settlement obligations that are nondischargeable pursuant to 11 U.S.C. § 523(a)(15).

After a trial on the merits in Miami, Florida, on February 3, 1999, the matter was taken under advisement. The Court has jurisdiction under 28 U.S.C. §§ 1334 & 157 (1994). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) (1994), and the Court may enter a final judgment in the case. The following shall constitute findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

### FACTS

The Debtor is a police officer employed by the City of Coral Springs, Florida, and was so employed at the time of the divorce judgment. The Plaintiff is employed as an automobile salesperson for Gold Coast Volvo in Pompano Beach, Florida. Before the divorce, the parties owned a home and a condominium. In the negotiations leading up to the execution of the marital settlement agreement, both parties were represented by counsel.

The parties were married for 11 years, and they have two children. In July 1997, by mutual agreement, the home was sold, and the parties separated and divided the household furniture. After paying debts and expenses of sale of the home, the parties realized the net sum of $12,000.00. By agreement, the Plaintiff received $11,000.00 of the sale proceeds and the Debtor kept $1000.00.

#### Financial Status of the Parties

The Debtor now resides in the condominium, which he purchased before the marriage. He pays mortgage payments and maintenance fees of $460.00 per month. The condominium has an estimated value of $27,000.00 and a secured debt of $26,749.98. The condominium is apparently 800 square feet in area. The Plaintiff and the couple's two children now live

in an apartment where the Plaintiff pays $1105.00 per month in rent.

The Debtor's gross income for 1998 was $69,443.12, with annual deductions of $25,000.56, resulting in an annual net income of $45,442.56. He pays $16,007.25 pea year in child support. His annual fixed expenses are $10,030.64 and living expenses are $12,900.00 (including private school tuition for his two children). After subtracting child support, fixed expenses, and living expenses from his net income, the Debtor is left with a total of $6504.67 in annual disposable income. The Debtor is furnished an automobile as part of his compensation, and he also owns a 1996 Dodge Dakota truck subject to a secured claim of $11,119.30.

In 1998, the Plaintiff earned a net income of approximately $34,000.00 and received $16,000.00 in child support. Thus, her total annual net income for herself and the two children was approximately $50,000.00. She listed $37,080.00 in annual expenses, leaving her a total of $12,920.00 in annual disposable income. The Plaintiff receives no paid sick leave, vacation pay or retirement benefits through her employer.

### The Marital Settlement Agreement

Plaintiff's Exhibit 2 includes a copy of the typed preliminary draft of the Marital Settlement Agreement from which the parties worked in negotiating the final terms of settlement. Paragraph 12, styled "Temporary and Rehabilitative Alimony," provides that the Debtor will pay to Plaintiff $1000.00 per month for sixty months and will secure this obligation with a life insurance policy in the face amount of $50,000.00.

The Debtor testified that he refused to agree to this provision or to the payment of any alimony, but that in consultation with his attorney he did agree to pay the Plaintiff $30,000.00 in three annual installments of $10,000.00. His counsel advised that if he did not agree to pay this sum, a trial on the merits would result, which

counsel wanted to avoid because of the expense.

In negotiations, the parties marked out the term "Temporary and Rehabilitative Alimony" and then interlined Paragraph 12 to read that the Debtor was agreeing to pay Plaintiff $30,000.00 as "Equitable Distribution." Plaintiff's domestic relations attorney, William Black, testified that he advised his client at the time that the label placed on this obligation was not important because in his opinion, the nature of the obligation was support no matter what it was called.

The Debtor testified that he would never have agreed to pay alimony and that he did not have the financial ability to pay the $30,000.00. He testified that he expected his father to give him these funds because his father has in previous years given such sums as part of a plan to avoid inheritance taxes. The Debtor stated that when his father learned that future gifts were to go to the Debtor's former spouse, the father declined to advance further funds to his son.

The final property settlement agreement placed the following obligations on the Debtor:

1. To pay the sum of approximately $16,000.00 per year as child support for the parties' two children.

2. To maintain medical, dental and optical insurance for the children, which coverage is available through Debtor's employment.

3. To convey to Plaintiff one-half of the value of Debtor's retirement valued as of the date of the Agreement.

4. To continue to pay for the children's private school tuition to the best of Debtor's ability to pay.

5. To pay all debts accruing during the marriage that remained unpaid, consisting of credit card and department store debt and C.S. Christian School debt.

6. To pay plaintiff $30,000.00 in three annual installments of $10,000.00

and plaintiff's attorney's fee of $1500.00 incurred as a result of the divorce.

The obligation to pay all marital debts is located in a separate paragraph from the paragraph originally labeled as "Temporary and Rehabilitative Alimony" and finally labeled as "Equitable Distribution." The credit card debt consists of the following obligations:

1. Burdine's — $1900.00
2. Direct March Mastercard — $4550.67
3. Ethan Allen — $4837.12
4. First Union Mastercard — $8226.88

The C.S. Christian School's claim is for $2379.77, and Plaintiff's attorney's bill is $1500.00, for a total obligation of $23,394.44.

The Plaintiff testified that she needed the payments the Debtor was obliged to make for her and her children's support and that on occasion, "My rent is late, my lights get turned off, my cable gets turned off." (Tr. at 116.) She said that she had had to borrow money from her father to pay her expenses and that if she had to pay her own attorneys fees it would adversely affect her ability to put "food on the table" for her children. (Tr. at 124.) The Plaintiff further testified that creditors were harassing her because of unpaid credit charges in her name that the Debtor was obliged to pay.

## DISCUSSION

The United States Bankruptcy Court provides in relevant part as follows:

(a) A discharge under 727 ... of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse ... for alimony to, maintenance for, or support of such spouse ... in connection with a separation agreement, divorce decree ... made in accordance with State ... law ... but not to the extent that—

(B) such debt includes a liability designated as alimony, maintenance or support unless such liability is actually in the nature of alimony, maintenance or support ...

11 U.S.C. § 523(a)(5)(B) (1994).

The issue of dischargeability of debts under 11 U.S.C. § 523(a)(5) is a matter of federal law governed by the United States Bankruptcy Code. *Strickland v. Shannon (In re Strickland),* 90 F.3d 444, 446 (11th Cir.1996) (citing *In re Harrell,* 754 F.2d 902, 904–05 (11th Cir.1985)). The objecting creditor has the burden of proof to establish the non-dischargeable nature of a claim arising out of a domestic relations proceeding. *Cassata v. Cassata (In re Cassata),* 119 B.R. 280, 282 (Bankr. M.D.Fla.1990) (citing *In re Long,* 794 F.2d 928, 930 (4th Cir.1986)); *In re Carbia,* 113 B.R. 761, 762 (Bankr.S.D.Fla.1990) (citing *In re Campbell,* 74 B.R. 805 (Bankr. M.D.Fla.1987)). In fact, there is a presumption that the debt is dischargeable. *Armento v. Armento (In re Armento),* 127 B.R. 486, 489 (Bankr.S.D.Fla.1991).

The mere labeling of an obligation in a property settlement agreement as support or property settlement is not binding; rather, the Bankruptcy Court must look to the substance of the obligations. *Freeman v. Freeman (In re Freeman),* 165 B.R. 307, 312 (Bankr. S.D.Fla.1994) (citing *In re Gianakas,* 917 F.2d 759 (3d Cir.1990)). In determining dischargeability under the statute, courts must look to the actual situation of the parties when the agreement was made. *In re Armento,* 127 B.R. at 490.

The Bankruptcy Court is instructed to consider many factors to determine whether an obligation stemming from a dissolution proceeding is in the nature of alimony or support for dischargeability purposes. These include:

1. Length of the marriage;

2. Whether children are adequately provided for;

3. Whether the obligation appears to balance disparate incomes;

4. Whether the obligation is payable as a lump sum or periodically;

5. Whether there is an actual need for support;

6. The section of the agreement where the clause is included;

7. Relative earning power of the parties.

*Freeman v. Freeman (In re Freeman),* 165 B.R. 307 313 (Bankr.S.D.Fla.1994); *Hall v. Hall (In re Hall),* 119 B.R. 272 (Bankr.M.D.Fla.1990); *In re Carbia,* 113 B.R. at 763.

■ The Plaintiff has not carried her burden to prove that the $30,000.00 equitable distribution payment was actually rehabilitative alimony and that the other debts proposed to be discharged by the Debtor were in the nature of support. Mr. Black, the domestic relations attorney for Plaintiff, testified that in his opinion, a trial would have resulted in an alimony award for Plaintiff because "it's an entitlement under the law because of the length of the marriage they were dissolving, she was entitled to some form of rehabilitative alimony." (Tr. at 11.) However, under the above factors, the eleven-year marriage was not of such duration as to warrant alimony solely on that basis. The same can be said of the fact that the Plaintiff is the custodial parent for two school age children.

The obligations the Debtor proposes to discharge do not appear to balance disparate incomes because, as has been discussed, the Plaintiff's net income is higher than the Debtor's when $16,000.00 annual child support payments are taken into account. Similarly, the Plaintiff's income as a car salesperson is sufficient to provide for herself and her children, so that actual need for further spousal support seems unnecessary, based on this record. The Plaintiff's testimony as to her own dire financial situation is not credible. She offered no reason that she could not have marshaled her resources to provide a comfortable living for herself and two children on a net income of $50,000.00 per year without having the television cable service disconnected. Comparing the relative earning power of the two parties shows that while the Debtor earns more than the Plaintiff at present, she has the potential to cam an income that is at least comparable to that of the Debtor.

The fact that the $30,000.00 payments were due in lump sums of $10,000.00 a year tends to support the Debtor's position that these payments were distribution of property rather than alimony. Furthermore, while labeling a particular property settlement provision is not conclusive as to the nature of the provision, in this case the "Equitable Distribution" label attached to the paragraph providing for the $30,000.00 payments corroborates the Debtor's statement that he never intended to pay any type of spousal support.

Based on this record, the Court must conclude that it is inconceivable that a fair-minded divorce court would have imposed an obligation to pay alimony, given the Debtor's ability to pay and his child support obligation. The Debtor only has $29,435.31 to meet his own living expenses and if he had to pay $10,000.00 in alimony to Plaintiff he would be left with $19,435.31 per year while Plaintiff would have a net income of approximately $60,000.00 a year for living expenses for the first three years after the divorce. If the marital debt and attorney's fees are added to the Debtor's burden, he would have very little left to sustain his own life. Such a result would hardly be fair and equitable.[1]

Furthermore, it is clear from the testimony of the parties that the Debtor never agreed to pay alimony. The nature of the obligations at issue in this case are not for the support of the Plaintiff, but were

---

1. When asked where the Debtor was expected to obtain the $10,000.00 to make the first equitable distribution payment, the Plaintiff replied, "I have not a clue nor did I even care." (Tr. at 141.)

agreed to by the Debtor on the unskilled advice of counsel in order to facilitate the settlement and avoid the expense of a trial. The actual financial situation of the Debtor at the time of the Marital Settlement Agreement was that he was unable to pay alimony and the marital debt while continuing to make substantial child support payments every month. Therefore, the debts to Plaintiff for a $30,000.00 equitable division of property, marital debt and attorney's fees are determined to be dischargeable under the provisions of 11 U.S.C. § 523(a)(5).

■ The Plaintiff prays in the alternative that the debt described herein, even if not in the nature of support, may still be declared to be nondischargeable under the provisions of 11 U.S.C. § 523(a)(15). This section provides in relevant part as follows:

(a) A discharge under section 727 ... does not discharge an individual debtor from any debt—

  (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or ... separation agreement ... unless—

    (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor ... or

    (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor;

The facts in this case demonstrate conclusively that the Debtor does not and never has had the ability to pay the debts

2. The Debtor has indicated a willingness to reaffirm the debt owed to his daughters'

in question. Furthermore, a comparison of the net incomes of the Debtor and the Plaintiff reveals that the Plaintiff is financially stronger, even when her obligations as a custodial parent and lack of employee benefits are considered. Thus, discharging the Debtor's property settlement debts results in a benefit to the Debtor that outweighs the detriment to the Plaintiff. Therefore, the Debtor's obligations to pay the $30,000.00 equitable distribution, marital debt,[2] and Plaintiff's attorney's fees are found to be dischargeable under 11 U.S.C. § 523(a)(15)(A) & (B).

IT IS SO ORDERED.

school, C.S. Christian School.